IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

JAA'LA EDWARDS, a minor,
MICHELE EDWARDS and
BRENT EDWARDS,

                    OPINION AND ORDER

      Plaintiffs,

                    07-cv-706-bbc

  v.

SCHOOL DISTRICT OF BARABOO,
EMPLOYERS MUTUAL CASUALTY CO.,
and SANDRA CONLEY,

      Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

  This is an unfortunate case that should not have been brought as a federal lawsuit. Plaintiff Jaa'la Edwards is a student in the School District of Baraboo who fell while she was walking outside during recess. Because she has a medical condition that makes her bones abnormally fragile, the fall caused a broken leg and wrist.

  Believing school officials were responsible for the fall, Jaa'la's parents brought this action. (Because the relevant facts relate primarily to plaintiff Jaa'la Edwards, I will refer to her simply as "plaintiff" for the remainder of the opinion.) Some hint of the legal merits of the suit is suggested by the difficulty plaintiff has had identifying a theory of the case.

1

Initially, plaintiff sued the school district and its insurance company only, on theories that the district was negligent under state law and had denied plaintiff a "free and appropriate public education" as required by the Individuals with Disabilities Education Act, 20 U.S.C. §§ 1400-87. Plaintiff then amended her complaint, adding teacher Sandra Conley as a defendant as well as claims for violations of Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132, the due process clause and the equal protection clause of the Fourteenth Amendment to the United States Constitution. Since then, plaintiff has withdrawn her equal protection claim, dkt. # 45, at 18, while attempting to expand her ADA claim to include a claim about a previous fall at school that was not raised in her complaint, id. at 22.

Defendants' motion for summary judgment is now before the court. The motion must be granted because plaintiff cannot show that the facts of this case give rise to a viable federal claim under any of her theories. Although it is clear that plaintiff's accident has caused her and her family great suffering and significant expense, not every terrible event involving public officials can be remedied with a civil rights lawsuit. The statutes plaintiff relies on do not apply to the facts of this case and plaintiff has not shown the necessary level of culpability by defendants to sustain a claim under the Constitution. Because I am dismissing all of plaintiff's federal claims, I will dismiss plaintiff's state law claims under 28 U.S.C. § 1367(c)(3). (Defendants had filed a motion to dismiss in part that had not been resolved by the court when the parties finished briefing defendants' summary judgment

2

motion. It is unnecessary to consider the arguments raised in defendants' motion to dismiss because I am granting the motion for summary judgment in full.)

Before setting forth the undisputed facts, I note a recurring objection raised by defendants in their responses to plaintiff's proposed findings of fact. Defendants disputed many of plaintiff's proposed findings of fact on the ground that they were derived from evidence not based on personal knowledge as required by Fed. R. Civ. P. 56(e)(1). Much of the evidence to which defendants object are plaintiff's medical records as well as a number of school records that were drafted by employees of the district. The records have been submitted to the court through an affidavit of plaintiff's lawyer, who avers that they are true and correct copies of documents defendants themselves produced in discovery.

Although defendants do not explain their objection, they appear to be making an argument that documents must be submitted by the person who actually created them. Rule 56 includes no such requirement. Averments in affidavits must be made on personal knowledge, but there is no requirement that an affiant have personal knowledge of all the facts in an attached document. If defendants' view were correct, documentary evidence would serve virtually no purpose at summary judgment because it could be replaced by witness testimony. It would also make it impossible for parties to submit documents when the drafter is unavailable or refuses to provide an affidavit.

Of course, documents must be properly authenticated and be admissible under one

3

of the exceptions to the rule against hearsay if they are asserted for the truth of the matter, Fed. R. Evid. 801-804, but defendants do not suggest that plaintiff's evidence is deficient in either of these respects. In particular, defendants advance no argument that these records would fail to qualify under Rule 803(6), as records made in the regular course of business, or as admissions by a party opponent under Rule 801(d)(2) with respect plaintiff's school records. In any event, because consideration of plaintiff's disputed evidence makes no difference to defendants' motions, it is unnecessary to decide whether any of plaintiff's documents might be inadmissible.

From the parties' proposed findings of fact and the record, I find the following facts to be undisputed.

## UNDISPUTED FACTS

Plaintiff Jaa'la Edwards is a student at Gordon Willson Elementary School, which is run by defendant School District of Baraboo. Plaintiff was born with a medical condition called osteogenesis imperfecta, which means that her bones are abnormally fragile, so much so that they may break or fracture even in the absence of trauma. Throughout her life, plaintiff has broken or fractured more than 40 bones. In 2005, plaintiff was confined to a wheelchair for eight weeks as a result of a leg fracture.

When plaintiff was in kindergarten in 2002, the school district conducted an

4

evaluation to determine whether she needed specialized services. The district determined that plaintiff needed "individualized physical therapy, guidance and accessibility adaptations" and it adopted an individualized education program to address limitations imposed by her medical condition.

The individualized education program remained in place until April 2005 when the district held a meeting with plaintiff's "IEP team members:" the school psychologist, school nurse, plaintiff's special education teacher, physical education teacher, regular education teacher and guidance counselor. At the meeting, the team decided to terminate the program because plaintiff did not need special education. Plaintiff's parents did not request a hearing or otherwise object to this determination. Plaintiff had no individualized education program from April 2005 until October 2007.

In 2006 and 2007, defendant Sandra Conley was plaintiff's fifth grade teacher. Before the school year started, defendant Conley reviewed plaintiff's "cumulative file." From reading the file, Conley was aware of plaintiff's bone condition and that she had been subject to an individualized education program. The file include letters from two of plaintiff's doctors, dated August 2001 and November 2005. The November 2005 letter states the following:

> This letter is in reference to Jaa'la Edwards (DOB 6/30/96). Jaa'la has a diagnosis of Osteogenesis Imperfecta. This results in her bones being more prone to fracture than average child her age.

5

> Most children with Jaa'la's condition are able to participate in the majority of activities performed in school but with some limitations. First, an adaptive physical education class would be appropriate at her age, primarily for safety reasons. Secondly, minor precautions should be instituted with respect to certain activities. Jaa'la should not participate in group or individual activities that entail a high probability of full body contact and/or collisions (e.g. floor hockey, football, trampoline, etc.) In addition she should be given some leeway with respect to self limitation. If at some point in the future, Jaa'la feels that a certain activity is risky, then she should be allowed to not participate. It is essential for Jaa'la, over time, to learn such self limitation and protection.
>
> On the other hand, Jaa'la should be encouraged to participate in most other usual school activities (e.g. jumping and galloping, etc), yet at the same time recognizing that severe torsion or impact would put her at increased risk to fracture. If at some point Jaa'la complains of significant, sudden pain, it is conceivable that she has developed a new fracture and she should be evaluated.

(I am not including the text of the 2001 letter because it was written when plaintiff was in kindergarten. Such a dated assessment would not be useful to anyone trying to understand plaintiff's needs many years later.)

In the fall of 2006, plaintiff's mother Michele Edwards noticed on multiple occasions that plaintiff was carrying a bag "full of textbooks." (Plaintiff spells Ms. Edwards's name inconsistently as "Michele," "Michelle" and "Michel'e." I have used the spelling that appears in the caption of the complaint.) Michele told defendant Conley at least twice that it was "unacceptable" for plaintiff to be carrying such a heavy bag. After speaking with the principal, Michele decided to buy plaintiff a bag with wheels that plaintiff could pull behind her. However, on one occasion when plaintiff was pulling the bag, one of the wheels "hit a

6

corner of the sidewalk," causing plaintiff to fall. Plaintiff broke her ankle and was placed in an air boot cast.

After this accident, Michele Edwards had a meeting on October 31, 2006, with the principal, school psychologist, school nurse, the physical education teacher and defendant Conley. Michele believed they were having an "IEP meeting." The school officials agreed to allow plaintiff to keep a second set of textbooks at home so that she would not have to transport them to and from school. (The parties dispute whether Michele stated at this meeting that she was worried about plaintiff's propensity to trip and fall and that plaintiff should not be sent outside for recess "in any inclement weather.")

On December 1, 2006, the school sent a letter to the parents informing them that the school "MUST" receive a note from a health care provider "if your child has any restrictions or limitations during recess, phys. ed. or other times." The letter also says, "Please be certain your child has proper winter gear to enjoy playing outdoors for up to 20-25 minutes in wind chills at 0 degrees or above."

On January 12, 2007, the weather in Baraboo included drizzle, freezing rain and snow flurries. Early that morning, the school's custodian applied 200 pounds of "high-quality, ice preventing salt" to the school's sidewalks and playground and another 400 pounds three hours later. Before afternoon recess, the school principal went outside to check the conditions of the playground. The ground was wet, but it did not appear to be slippery.

7

After "scuffing his feet" on the sidewalk to test for slickness, he determined that the playground was safe for children. The air temperature was 27 degrees Fahrenheit.

Afternoon recess began at 1:50 pm. Defendant Conley was aware that the principal had not cancelled recess, that salt had been placed on the ground outside the school and that plaintiff was still wearing her air boot cast. Conley did not require plaintiff to stay indoors and plaintiff did not request this. Before the students went outside, Conley told them to be careful and then looked at plaintiff before saying, "Some of us need to be more careful than others." (The parties dispute whether Conley told students that they should be careful because the ground was slippery. The parties also dispute whether portions of the playground and sidewalk were "slick and slippery.")

Outside, a group of students was playing full court basketball. Others were "running, jumping and playing without incident." Plaintiff went outside to watch her friends play basketball. While she was walking, she slipped and fell to the ground. (The parties dispute whether plaintiff slipped on ice.) No other accidents were reported that day.

Fourth grade teacher William Froelich was supervising the playground during afternoon recess. Although he knew that a student named Jaa'la Edwards "had particularized health issues pertaining to outdoor recess activities," he did not recognize her when he came to help her after she fell.

As a result of the fall, plaintiff broke her leg and her wrist. She did not attend school

8

for the second semester of the fifth grade. For the 2007-2008 school year, plaintiff is classified "as an IEP student."

OPINION

A. Individuals with Disabilities Education Act

Defendants advance several reasons for dismissing plaintiff's IDEA claim, but I need not consider them all. To begin with, plaintiff's theory of liability under IDEA goes far beyond the scope of the statute. It seems highly unlikely that Congress intended to allow a statute aimed at providing disabled children with a "free and appropriate public education," 20 U.S.C. § 1412(a)(1)(A), to be converted into a tort law for playground accidents. Not surprisingly, plaintiff cites no cases in which a court interpreted IDEA to apply in a similar circumstance.

In any event, I agree with defendants that plaintiff cannot show that she was a member of the class the statute protects at the time the accident occurred. Part of IDEA's definition of "child with a disability" is a child who "needs special education and related services." 20 U.S.C. § 1401(3)(a). Only those children are entitled to an "individualized education program," 20 U.S.C. § 1414(d), or any of the other rights set forth in the statute. In April 2005, the district determined that plaintiff no longer needed special education or related services and it terminated her individualized education program, a decision that did

9

not change until October 2007, well after plaintiff's accident.

Plaintiff argues that this court should conclude that the statute applies to her despite the district's decision because she *did* need services as of January 2007 and because her mother believed that the district concluded at the October 31, 2006 meeting that plaintiff needed an individualized education program. Unfortunately for plaintiff, whether she actually needed services in January 2007 is not a question I may consider in the context of this case. If plaintiff wished to challenge the school district's determination that she was not a child in need of special education, federal and state law provided a particular way to do that and plaintiff never followed it.

Under 20 U.S.C. § 1415(b)(6), states are required to provide a mechanism for students and their parents to present a complaint "with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child." In Wisconsin, that opportunity is provided by Wis. Stat. § 115.80(1)(a)1, which says that a "parent, or the attorney representing the child, may file a written request for a hearing within one year after the refusal or proposal of the local educational agency to initiate or change his or her child's evaluation, individualized education program, educational placement, or the provision of a free appropriate public education." See also VanDenBerg v. Appleton Area School District, 252 F. Supp. 2d 786, 787-88 (E.D. Wis. 2003) ("Section 115.80 supplies Wisconsin's due process hearing

10

procedure pursuant to IDEA, 20 U.S.C. § 1415, which places the burden on states to establish procedures to ensure that children and parents are given procedural safeguards.") Only after that hearing may a party challenge the school district's decision in federal court. 20 U.S.C. § 1415(i)(2). It is undisputed that plaintiff never requested a hearing to challenge the school district's decision that she did not need services and she gives no reason for this court to disregard that failure.

The one argument plaintiff makes is that the court should conclude that the school district's decision to eliminate her individualized education program was nullified or reversed at the October 2006 meeting her mother had with school officials after plaintiff broke her ankle while walking home from school. Although the parties do not agree on everything that was said at the meeting, plaintiff has adduced no evidence that she or the school officials discussed the need for a new individualized education program. Plaintiff's mother testified that she believed they were having "an IEP meeting" on October 31, but she does not identify any basis for that belief. Without a determination by the school district or reviewing authority that plaintiff was a child in need of special education and services during the relevant time period, she cannot seek relief under IDEA.

### B. Americans with Disabilities Act

The ADA does not provide any better fit than IDEA for plaintiff's claim. She seeks

11

relief under Title II of the ADA, which states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

An immediate question raised by the language of the statute as applied to plaintiff's claim is from what "service, program or activity" was she excluded? The problem that plaintiff identifies is one of *inclusion*, not exclusion: she says that her teacher erred in allowing her to go outside for recess with the rest of the class. Plaintiff avoids this fundamental flaw in her claim simply by changing the subject. In her brief, she says that she was excluded from participation in school because she did not attend class for a semester after the accident. Dkt. #45, at 22. That's true, but also irrelevant. Plaintiff isn't suing the school district for failing to help her attend school during her recovery; she is suing them for failing to prevent her accident. Thus, her absences after her fall might be relevant to the question of damages, but they cannot be used to prove liability.

Plaintiff also points to school that she missed after she broke her ankle while pulling her book bag in 2006. This observation not only suffers from the same confusion over liability and potential damages, it is also related to a claim that plaintiff never brought. Her amended complaint focuses on her fall in January 2007 only; she did not bring a claim related to her accident in the fall of 2006.

12

Although plaintiff doesn't say so explicitly, she could mean to argue that she was constructively denied access to the playground because defendants did not make it adequately safe for her. This would be a very hard argument to make in light of the efforts defendants took to salt the playground and inspect it before allowing the students to play on it. In any event, defendants are correct that such a claim would not be permitted under Foley v. City of Lafayette, Indiana, 359 F.3d 925 (7th Cir. 2004), in which the court held that the ADA does not require public entities to provide accommodations for "temporary conditions" caused by bad weather, such as a ramp made inaccessible because of snowfall. Plaintiff attempts to distinguish Foley by pointing out that her "difficulty with her heavy book bag was not a 'temporary condition.'" Dkt. #45, at 24. Again, this observation is irrelevant to the claim that is before the court. Defendants' motion for summary judgment must be granted with respect to plaintiff's ADA claim.

### C.  Substantive Due Process

The parties agree that under DeShaney v. Winnebago County Dept. of Social Services, 489 U.S. 189 (1989), public officials have no general duty under the Constitution to protect people from dangerous conditions. Although an exception exists for individuals in state custody, e.g., Helling v. McKinney, 509 U.S. 25 (1993), the exception does not extend to groups such as children or students, even though they are more vulnerable and less

13

able to fend for themselves.  Nabozny v. Podlesny, 92 F.3d 446, 459 (7th Cir. 1996); J.O. v. Alton Community Unit School District 11, 909 F.2d 267, 272-73 (7th Cir.1990).

Thus, plaintiff can prevail on a claim that defendants' failure to protect her violated her due process rights only if she can show that defendants created the danger that caused her harm.  King ex rel. King v. East St. Louis School District189, 496 F.3d 812, 817-18, (7th Cir. 2007).  Plaintiff cannot meet this standard.  Even if I assume that plaintiff slipped because she walked on ice rather than for another reason, defendants did not create the ice outside the school and they did not force plaintiff to walk on any ice that was there.  At the worst, the school district failed to sufficiently clear the ice from the ground before allowing plaintiff to walk on it.  Such a failure to act does not trigger liability under the Constitution. Id. at 817-18 (liability under state created danger theory requires "affirmative act" that is proximate cause of plaintiff's injury).

Plaintiff says that the affirmative act was defendant Conley's decision to force plaintiff to go outside, but the facts do not show that Conley forced plaintiff to do anything. Her alleged error was that she failed to *stop* plaintiff from going outside.  Were plaintiff an adult, there could be no serious argument that simply allowing her to leave the building could give rise to liability under the Constitution.  Because the court of appeals has declined to distinguish between adults and children in the context of the government's constitutional duty to protect, any theory of liability that relies on plaintiff's status as a child fails.

14

Even if I assume that defendant Conley "forced" plaintiff to go outside, plaintiff would still have to show that Conley was "deliberately indifferent" to plaintiff's safety. Id. at 819 (question in substantive due process cases is whether defendant's act "shocks the conscience" and "when the circumstances permit public officials the opportunity for reasoned deliberation in their decisions, we shall find the official's conduct conscience shocking when it evinces a deliberate indifference to the rights of the individual"). This means that plaintiff must show that Conley *knew* there was a substantial risk that plaintiff would be seriously harmed by going outside and she consciously disregarded that risk by failing to take reasonable measures to abate it. Farmer v. Brennan, 511 U.S. 825 (1994).

This is another standard that plaintiff cannot meet. Of course, defendant Conley knew that there was *some* risk to plaintiff if she went outside, but that was the case when plaintiff went anywhere. Plaintiff had broken more than 40 bones in her life, which means that she took a risk every time she walked outside. Even if she stayed inside, there was still a risk that she could trip on something lying on the ground or slip on water or mud tracked in from another student. Would the teacher be liable for that as well if the accident could have been avoided by prohibiting plaintiff from leaving her desk?

Plaintiff argues that the risk outside was greater than inside because of the weather. The extent to which that is true is far from certain. Plaintiff was unable to identify in her deposition why she fell and she adduces no evidence that even one other student had an

15

accident during recess despite engaging in activities such as playing basketball. Further, it is undisputed that the ground had been salted twice in the morning and the principal had inspected the ground just before recess and concluded that it was safe.

To the extent that the risk may have been heightened, plaintiff has adduced no evidence that defendant Conley believed the risk of plaintiff seriously injuring herself was "so great that [it was] almost certain to materialize if nothing [was] done." Delgado v. Stegall, 367 F.3d 668, 672 (7th Cir. 2004) (setting forth standard for deliberate indifference). Although it may be inferred that Conley knew that there had been freezing rain and snow flurries falling earlier in the day, she also knew that the ground had been salted and that the principal had made a determination that the playground was safe. Plaintiff identifies no reason why Conley should not be entitled to rely on the principal's judgment. Cf. Johnson v. Doughty, 433 F.3d 1001, 1010-11 (7th Cir. 2006) (nonmedical staff not deliberately indifferent to health risk when they rely on judgment of health professionals).

Also, plaintiff adduces no evidence that her parents had provided written instructions to the school regarding any special treatment plaintiff needed during recess, even though the school district had sent a letter to the parents informing them that such instructions were necessary. Although Michele Edwards testified that she told school officials that plaintiff should not be sent outside "in inclement weather," she does not say that she described what

16

that meant or how a determination would be made to keep plaintiff indoors.

Finally, in assessing the reasonableness of defendant Conley's decision to allow plaintiff to go to recess, another factor must be taken into account, which is the highly delicate balance that school officials had to maintain in caring for plaintiff. Plaintiff faults defendants for failing to adequately realize their duty to protect her, but she disregards another important duty they had, which was to keep her from feeling ostracized and excluded. This duty is reflected in plaintiff's doctor's November 2005 letter, in which he wrote that plaintiff should be "encouraged" to participate in most "usual school activities." One way to keep plaintiff safe would be to prevent her from going anywhere, but that would cut directly against one of the primary purposes of statutes such as IDEA and the ADA, which is to *include* disabled persons in the activities of others rather than segregate them. In this case, defendant Conley allowed plaintiff to be included by permitting her to watch her friends play basketball and telling her to be careful while she was outside. In hindsight, defendant Conley made the wrong judgment in balancing plaintiff's needs of protection and inclusion, but a mistake in judgment is not a constitutional violation.

Because plaintiff fails to show a constitutional violation by an individual, she cannot maintain her claim against the school district. King, 496 F.3d at 819 (to hold municipality liable, plaintiff must first show violation of constitutional rights by municipal employee). Accordingly, I must grant defendants' motion for summary judgment with respect to

17

plaintiff's claims under the due process clause.

### D. State Law Claims

This leaves plaintiff's state law negligence claims. Under 28 U.S.C. § 1367(c)(3), a district court may decline to exercise supplemental jurisdiction over state law claims when all of the federal claims have dropped out of the case. Although dismissal of the state law claim is not mandatory in every instance, the general rule is that "if the federal claims drop out before trial, the district court should relinquish jurisdiction over the state-law claims" Williams Electronics Games, Inc. v. Garrity, 479 F.3d 904, 907 (7th Cir. 2007) (citing Groce v. Eli Lilly & Co., 193 F.3d 496, 501 (7th Cir. 1999)), particularly if substantial federal resources have not been expended on the state law claim to date, Wright v. Associated Insurance Cos., 29 F.3d 1244, 1251-52 (7th Cir.1994). In this case, I see no reason to retain jurisdiction over the state law claim and the parties do not provide one.

### ORDER

IT IS ORDERED that

1. The motion for summary judgment filed by defendants School District of Baraboo, Sandra Conley and Employers Mutual Casualty Co, company, dkt. #28, is GRANTED with respect to the federal law claims filed by plaintiffs Jaa'la Edwards, Michele Edwards and

Brent Edwards.

2. Defendants' motions to dismiss, dkt. ##16 and 21, are DENIED as moot.

3. I decline to exercise supplemental jurisdiction over plaintiffs' state law claims. These claims are DISMISSED without prejudice to plaintiffs' refiling them in state court.

4. The clerk of court is directed to enter judgment in favor of defendant and close this case.

Entered this 11th day of August, 2008.

BY THE COURT:

/s/

_____
BARBARA B. CRABB
District Judge

19